JOHN A. PENN, PROSECUTOR, v. THE MAYOR OF THE BOROUGH OF COLLINGSWOOD, NEW JERSEY, RESPONDENT.

Submitted January 29, 1932—Decided June 2, 1932.

Before Justices TRENCHARD and DONGES.

For the prosecutor, *Albert S. Woodruff.*

For the respondent, *Howard L. Miller.*

PER CURIAM.

This writ brings up the action of one Joseph H. Van Meter, who is the director of public affairs and public safety, and likewise the mayor of the borough of Collingswood. Prosecutor, Penn, was chosen on June 10th, 1929, by resolution of the board of commissioners, comprising three members, to be solicitor of the borough. The resolution is that "the following appointments be made to the offices indicated until the annual meeting in May, or until their successors are appointed and qualify," and amongst the persons designated is the said Penn.

It appears by the record that on June 16th, 1931, Joseph H. Van Meter, mayor, wrote a letter to Penn requesting his resignation to take effect Wednesday, July 1st, 1931. Thereafter on August 17th, 1931, Joseph H. Van Meter, mayor and director of public affairs, wrote to Penn as follows:

"You are hereby suspended from your position as solicitor for the borough of Collingswood for the following reasons * * *."

And then follow seven reasons, five of which refer to remarks that the prosecutor is alleged to have made touching the mayor, and particularly with reference to the administration of the office of mayor, and generally reflecting upon the mayor. The notice further called upon Penn to answer in writing within ten days, or he would be discharged, and stated that in the event of his filing an answer, he would be given a public hearing.

Thereupon Penn answered by denying the jurisdiction of the mayor to try him upon any charges. The mayor then gave notice that on Thursday, the 3d day of September, A. D. 1931, at the hour of ten o'clock in the forenoon, at the council chambers of the borough, testimony would be heard upon the complaint served upon Penn in the matter.

Thereafter on August 3d, 1931, the mayor notified Penn that, inasmuch as Penn had failed to answer the charges and failed to appear at the hearing, he was discharged. This notice evidently is in error as to date, but it so appears in the records.

The minutes of the hearing, as certified by the borough clerk, are as follows:

"The mayor asked if Mr. Penn was present and getting no response asked if Mr. Penn was represented and again getting no answer. The mayor then stated that Mr. Penn not being present or represented the case could not be heard, the witnesses could go and the case is dismissed."

Two infirmities appear to be insurmountable to the sustaining of the action of the mayor. First, it does not appear that the judicial power to try this officer was delegated to the mayor. Under the amendment of 1915 to the Walsh act, it is beyond question that the judicial power, as well as the executive and administrative powers, are required to be distributed to the several directors of the departments created. It has been held that when the power is so delegated, the officer to whom the judicial power is delegated is the only one who may hear charges. *Foley* v. *Orange,* 91 *N. J. L.* 554; 103 *Atl. Rep.* 743. But nowhere does it appear that control of this public office was put in the department of public affairs, or in any department over which the said Van Meter had jurisdiction. While there was a requirement by statute that it should be delegated, there does not appear from the record to have been any such delegation. It might have been delegated to some other department, which would have the sole right to hear and determine such charges.

There does not appear to be any requirement or provision of the statute that the duties of borough solicitor are under the director of public affairs. Under the law, the matter of the delegation of powers and supervision of subordinate officers is in the hands of the entire commission to be delegated as the commission sees fit, and no office is necessarily attached to any department, unless the powers delegated necessarily include that office, as for example, if the director of public safety is put in charge of the police department, it would follow that the members of that department would come under the supervision of such director; and here, if the law department was put under the mayor or director of public safety, then members of that department might be assumed

to come under his supervision. But in this record it does not appear that such duties have been so assigned. It might easily be that they were assigned to the director of revenue and finance or to some other director.

2. While there may be some doubt about the propriety of a director of a department sitting to hear charges which were preferred by himself against a public officer in his department, it seems not necessary to determine this, because, if there were adequate charges made and if the mayor as director of public affairs had authority to try the charges, the record does not disclose that there was any evidence to support the charges and that there was any finding by him of the guilt of the prosecutor. He seems to have assumed that silence upon the part of Penn was tantamount to an admission of guilt and, without the swearing of witnesses or the hearing of anything upon which a judgment could be pronounced, he appears to have notified the prosecutor that he was discharged. Nowhere in the record does it appear that there was any finding of guilt.

We conclude, therefore, that the action of the mayor should be set aside, and it is accordingly so ordered, but without costs.